## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS (Boston)

| | | |
|---|---|---|
| Comcast of Massachusetts I, Inc. ("Comcast") | ) | Case No.: **1:05-cv-11554-REK** |
| | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF LAW IN SUPPORT** |
| | ) | **OF PLAINTIFF'S MOTION FOR** |
| vs. | ) | **DEFAULT JUDGMENT & ASSESSMENT** |
| | ) | **OF DAMAGES** |
| Maurice A. Rousseau III d/b/a Art's Auto Center | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |

## I.     Liability

**1. Procedural history**

The Plaintiff filed a Complaint in this action on July 22, 2005.  The Defendant was served *in hand*, with copies of the Complaint, Summons and other pertinent documentation on August 4, 2005.  Thereafter, the Defendant failed to appear in this action.  On December 13, 2005, more than twenty days after service was made upon the Defendant, the Plaintiff made request of the Clerk of Court to enter Default against the Defendant.  On December 15, 2005 Default was entered against the Defendant in this action.  Plaintiff has now moved for judgment against the Defendant.

**2.  Well Pled Facts Deemed Proven Upon Default**

The Default already entered in this action against the Defendant is similar to a finding of liability against the Defendant.  See, *Almedia v. Secretary of Health Education of Welfare*, 622 F. 2d 1044 (1st Circuit 1980).  Based upon the Default that has already entered against the

Defendant, the Plaintiff has now proven the liability of the Defendant as to the matters set forth in the Plaintiff's pleadings.

Accordingly, the Plaintiff has proven certain pertinent facts, including but not limited to the facts that

a.  Comcast provides cable television services to subscribers in the Ipswich area, and other areas in Massachusetts pursuant to franchise agreements with various municipalities.

b.  Comcast is the successor-in-interest to the legal entity that held the prior cable television franchise in this area, and as such successor, Comcast has the right to pursue the claims set forth herein, even if said claims may have accrued during the time that the predecessor-in-interest held the cable television franchise.

c.  At all times relevant hereto, the Defendant was an individual operating a used car sales business doing business as a long as "Art's Auto Center" at 134 Town Farm Road Ipswich, MA.

d.  In order to provide cable television services, Comcast pays fees to programmers for the right to receive programs, mostly by way of interstate radio communications, and transmit their programming over Comcast's system.

e.  The signals that Comcast transmits over its system are private communications not intended for public use.

f.  Subscribers pay Comcast based on the level of service they wish to receive.

g.  Only subscribers are authorized to receive active signals in the cable lines entering an individual's home or business.

h.  On or before July 23, 2002, the Defendant or some third party effectuated the

unauthorized interception of Comcast's cable television signals by making an unauthorized physical alteration to the wiring entering its place of business, thereby allowing for cable television signals to be brought in to the Defendant's place of business without Comcast's authorization, and without payment for said service (hereinafter the "unauthorized hook up").

   i.   In effectuating and utilizing the unauthorized hook up the Defendant acted willfully and for the purposes of commercial advantage or private financial gain.

Based upon these facts and others set forth in the Plaintiff's pleadings, the Defendant is now liable to the Plaintiff for willful violations of Title 47 U.S.C. § 553(a). Specifically, the Defendant's actions violated §553(a)(1), which provides:

**No person shall intercept or receive or assist in intercepting or receiving any communications services offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.**

## II.  <u>Damages</u>

**1.   Damage Provisions and Remedy Provisions in Title 47 U.S.C. § 553(c)**

Title 47 U.S.C. §553(c) provides civil damages and remedies to an aggrieved party from Defendants who have violated the above referenced §553(a)(1). Various subsections of § 553 (c) provide:

   1.   The Court may grant a final injunction to prevent further violations of §553 (a)(1) pursuant to 47 U.S.C. § 553 (c)(2)(A);

   2.   The Court may grant recovery of full costs including awarding reasonable attorney's fees to the aggrieved party who prevails pursuant to 47 U.S.C.

553(c)(2)(C); and

3.    The Court may award actual damages or the Court may, at the Plaintiff's election, award statutory damages in a sum of not less than $250.00 or more than $10,000.00 as the court considers just, pursuant 47 U.S.C. § 553(c)(3)(A)(ii).

4.    The court can increase the statutory damage award by up to $50,000.00 in any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain pursuant to 47 U.S.C. § 553(c)(3)(B).

## 2.    Analogous Case Law

The Plaintiff has moved for Default judgment pursuant to 47 U.S.C. § 553, a provision of Title 47 that prohibits the unauthorized interception of television signals from the cable television system. The telecommunications provisions of the United States Code also contain the provision, 47 U.S.C. § 605, which prohibits the unauthorized utilization of interstate radio-originated communications. Section 605 is extremely similar to 47 U.S.C. § 553.

Both provisions essentially bar the unauthorized interception of television signals. Also, the statutory damage provisions for non-commercial defendants in § 605 and § 553 are extremely similar. In fact, the Second Circuit has held that where there is an unauthorized interception of signals from a coaxial cable, and the signals intercepted from the cable include interstate radio-originated communications, both §605 and §553 are violated. See *International Cablevision, Inc. v. Sykes* ("Sykes I"), 997 F. 2d 998, 1007 (2d Cir. 1993); *International Cablevision, Inc. v. Sykes* ("Sykes II"), 75 F.3d 123, 131 n.4 (2d Cir. 1996); but see  *Charter v Burdulis* 367 F.Supp.2d 16 (D. Mass 2005). In any event, even if § 605 might not apply for unauthorized

cable television violations in the District of Massachusetts the cases decided pursuant to 47 U.S.C. § 605 are, at least, analogous or similar to §553 cases. Accordingly, the Plaintiff will make citations to § 605 cases simply as persuasive authority.

**3.     The Assessment of Statutory Damages**

Although 47 U.S.C. §553(c) provides little guidance on the assessment of statutory damages, courts have used a variety of methods when assessing statutory damages including:

**(a) Estimating actual damages**, See *Comcast v Naranjo* 303 F. Supp. 2d 43 (D. Mass 2004) and *Charter v Burdulis* 367 F.Supp.2d 16 (D. Mass 2005).

**(b) Assessing additional damages, over and above an estimate of actual damages, pursuant to the exemplary damages provision of the statute, 47 U.S.C. § 553(c)(3)(B), based upon the willfulness and private financial gain of the defendant.** See *Mountain Cable Company v Choquette* 53 F.Supp.2d 107 (D. Mass 1999) and *Charter v Burdulis* 367 F.Supp.2d 16 (D. Mass 2005)

**4.     The Estimate of Actual Damages**

**A.  Facts Pertaining to Estimate of Actual Damages**

In addition to the facts determined by the Default, by Affidavit the Plaintiff has asserted that:

1.   On or about July 23, 2002, the business known as Art's Auto Center did not maintain an account with Comcast and it was not authorized to receive signals.

2. On or about July 23, 2002, the business known as Art's Auto Center located at 134 Town Farm Road, Ipswich, MA was receiving Comcast's signals without authorization through the unauthorized hook up.

3. On or about July 23, 2002 the Defendant admitted to willful unauthorized interception of signals saying "You've got me with illegal cable, what do you want me to say?"

4. On or about July 23, 2002 the Defendant admitted to receiving Comcast's signals without an account for a year and a half.

5. The minimum pertinent period of time for the calculation of damages for the Defendant's reception of signals would be the 18 month period from January 2001 until July 2002.

6. An unauthorized connection without the use of some type of black market or unauthorized descrambling device would still allow for the receipt of basic programming (unscrambled) into the business. During the pertinent period of time, the cost for a business other than a bar, restaurant, or a nightclub would have been $43.95 per month.

7. Therefore, the damages for the unauthorized interception are, at a bare minimum, $791.10.

Based upon these facts alone we have an estimated damage of $791.10. Yet, it is clearly possible that the unauthorized interception of signals could have been going on much longer than the eighteen months admitted by the Defendant.  Had the Defendant appeared in this action, Comcast might have been able to prove, through discovery, that the unauthorized interception occurred prior to January, 2001.  Yet, unfortunately for Comcast, because the Defendant chose not to appear in this action after being served *in hand,* Comcast is left with little evidence as to the length of the unauthorized interception other than the Defendant's admission.

**5.    Assessing additional damages, over and above an estimate of actual damages, pursuant to the exemplary damages provision of the statute, 47 U.S.C. § 553(c)(3)(B), based upon the willfulness and  commercial advantage or private financial gain of the Defendant.**

The unauthorized interception of signals in this case was willful and the actions were committed to commercial Defendant. This Court has found that where a commercial defendant willfully engages in the unauthorized interception of signals, such a defendant can be subject to additional statutory damages pursuant to 47 U.S.C. § 553(c)(3)(B).   See *Mountain Cable Company v Choquette,* 53 F.Supp.2d 107 (D. Mass 1999).   In the *Mountain Cable* case the Western Division of this Court awarded an additional $3,000.00 in statutory damages for willful statutory violations for private financial gain pursuant to  § 553(c)(3)(B) against a landlord who was providing signals, by way of an unauthorized interception, to a "handful of tenants". *Id* at 113.

In fact, the Central Division of this Court has recently found that even where a residential defendant willfully engages in the unauthorized interception of signals to avoid paying bills, such violations subject that defendant to additional statutory damages pursuant to 47 U.S.C. § 553(c)(3)(B) as a willful private financial gain.  See *Charter v Burdulis* 367 F.Supp.2d 16 (D. Mass 2005).  In the *Charter* case the Court assessed additional $1,000.00 against the residential defendants for the willful private financial gain.

In this action the Defendant clearly was commercial in nature.  The Defendant has defaulted to the allegation that he was in the used car business.  Additionally, the uncontroverted affidavit of the Comcast employee filed herewith clearly shows that the building getting signals was a commercial building.  There should be no doubt that the unauthorized interception of signals was willful. Not only did the Defendant default to the allegation that the acts were willful but he also made a statement/admission to the Comcast employee saying "You've got me with illegal cable, what do you want me to say?"

Based upon the willful, commercial violation of the statute this Defendant should be assessed additional statutory damages even higher than the residential defendant in the *Charter* case and even higher than the landlord in the *Mountain Cable* case. If anything, a used car dealership is more "commercial" in nature than the landlord of a small multifamily dwelling.

Most of the case law dealing with unauthorized interception of signals by commercial defendants pertains to defendants that are bars and nightclubs engaged in the unauthorized interception of signals for a single pay-per-view event. See *Home Box Office v Champs of New Haven, inc.* 837 F.Supp. 480 (D. Conn. 1994). Some of these damages awards are significant in *Home Box Office* case the Connecticut Federal District Court awarded statutory damages of $10,000.00 for the unauthorized interception of signals for a single pay-per-view event by a bar on one night.. The court in the *Champs* case actually reduced an original default judgment award of $250,000.00 down to $10,000.00. Nonetheless, it still awarded $10,000.00 in damages after saying that "There are no allegations of repeated violations over an extended period of time, of substantial unlawful monetary gains by the defendants, or, conversely, of any significant actual damages to the plaintiff." *Id* at 484. In other words, even a non-egregious *commercial* violation still warranted $10,000.00 in statutory damages.

2. The case of *Time Warner Cable of New York City v. Phelina's Suds* No 00 Civ. 4432 (LTS) (REL) 2004 WL 1293241 (S.D. NY, 2004) (a copy of the magistrates decision on default judgment, later approved by the judge, is attached hereto as **"Exhibit A"**) appears to be one of the few available cases that have a similar fact pattern to this Civil Action. Time Warner alleged that the defendant was a commercial business but it was not a bar or a nightclub it was a Laundromat. Time Warner was able to show that there was unauthorized interception of signals by virtue of an unauthorized connection but, as is the case in a civil action, Time Warner could not show that there were any premium (scrambled) signals being obtained without authorization. In fact, Time Warner could not even make any allegations as to when the unauthorized connection was initiated. Even without any estimate as to how long the piracy has been going on, the New York Federal Court still awarded Time Warner $5,000.00 in civil statutory damages for

the willful, commercial unauthorized interception of signals by the Laundromat. In this civil action, the Plaintiff has an admission that there was a year and a half of unauthorized interception. The *Time Warner* case was decided pursuant, 47 U.S.C. § 605 a different telecom piracy provision that is similar to 47 U.S.C. § 553 (see **Analogous Case Law** section above). Nonetheless, the *Time Warner* case is an extremely similar to this civil Action.

    5.  Conclusion as to Statutory Damages

   Based upon all of the above the Plaintiff asserts that $5,000.00 is a reasonable and just statutory damage award for this commercial defendant. There was, by admission, at least 1½ years of willful commercial unauthorized interception of Comcast's signals. Between the baseline statutory damage award and the award which pertains to the willful commercial nature of the violation, an award of $5,000.00 can easily be justified based upon the statutes, the case law, and the facts as they pertain to this case.

       **III.**   <u>**Injunctive Relief**</u>

   Based upon the Defendant's liability as determined by the default, the Plaintiff is entitled to injunctive relief against the Defendant pursuant to Title 47 U.S.C. § 553 (c)(2)(A) which provides that the Court:

     "may grant temporary and final injunctions on such terms as it may

     deem reasonable to prevent or restrain violations of subsection (a)(1)

     of this section"

   The Plaintiff need not prove irreparable harm for the injunction to issue. Where express authority for issuance of statutory injunctions is provided by legislative enactment, an injunction

may issue without resort to the traditional "equitable" prerequisites so long as liability has been established under the statute. See *General Instrument Corp. v. Nu-Tek Electronics & Manufacturing, Inc.*, 3F. Supp 2d 602, 607 (E.D.Pa.1998), aff'd 197F.3d 83 (3d Cir.1999). The terms of the requested injunction are reasonably drafted to thwart any future piracy activities by the Defendant.

### IV.    Attorney's Fees

Pursuant to Title 47 U.S.C. 553(c)(2)(C), the Court should direct the recovery of full costs, including awarding reasonable attorneys fees to aggrieved party who prevails. The First Circuit follows the "lodestar" approach when awarding attorney's fees pursuant to a Federal statutory authorization. See, <u>Furtado v. Bishop</u>, 635 F.2d 915, (1st Cir. 1980). Using the "lodestar" approach, the Court would normally multiply the number of hours worked by a reasonable hourly rate. Utilizing the "lodestar" approach, the Court would, in essence, multiply the reasonable number of hours worked by a reasonable hourly rate. Plaintiff's counsel has filed an Affidavit with this Court that would justify an attorney's fees award of $1,440.00.

### V.    Post-judgment Interest

The Plaintiff is entitled to post-judgment interest accruing on the Judgment pursuant to 28 U.S.C. §1961. Said statute covers post-judgment interest on civil actions brought to judgment in U.S. District Courts.

### VI.    Costs

The Plaintiff is also entitled to costs incurred in this action pursuant to § 553, specifically:

|   |   |   |
|---|---|---|
| a. | Filing Fee: | $250.00 |
| b. | Sheriff's Service Fee: | <u>$  64.40</u> |

**TOTAL COSTS:**          **$314.00**

## VII.    <u>Conclusion</u>

Pursuant to all of the above, the Plaintiff is entitled to a default judgment as follows:

1.    $5,000.00 in statutory damages pursuant to § 553;

2.    Attorney's and paralegal's fees of $1,440.00

3.    Costs of $314.00

4.    The issuance of a permanent injunction pursuant to Title 47 §553 utilizing the following language or language of a similar nature:

> "The Court hereby enjoins the Defendant, the Defendant's respective agents, servants, employees, and any person or entity controlled directly or indirectly by the Defendant or acting on the Defendant's behalf from making any unauthorized connections into the Plaintiff's cable television distribution system in violation of provisions of Title 47";

5.    Post-judgment interest running on the judgment pursuant to 26 U.S.C. § 1961.

Respectfully Submitted for the Plaintiff,
By Its Attorney,


<u>3/15/2006</u>                              <u>/s/ John M. McLaughlin</u>
Date                                     John M. McLaughlin, Esq.
                                         **Green, Miles, Lipton & Fitz-Gibbon LLP**
                                         77 Pleasant Street
                                         P.O. Box 210
                                         Northampton, MA 01061-0210
                                         Telephone:  (413) 586-0865
                                         BBO No. 556328

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
COMCAST OF MASSACHUSETTS I, INC.,                   )
     Plaintiff                                    )
                                                    )
     v.                                           )     CIVIL ACTION
                                                    )     NO. 03-11779-REK
ANDREW DOUCETTE,                                    )
     Defendant                                    )
_____ )

**Memorandum and Order**
May 18, 2005

**I. Pending Matters**

Pending for decision are matters related to the following filings:

(1) Plaintiff's Motion to Amend Motion for Default Judgment (Docket No. 11),

Memorandum in Support of Plaintiff's Motion to Amend Motion for Default Judgment (Docket

No. 12), Plaintiff's Amended Motion for Default Judgment (Docket No. 13), Memorandum of

Law in Support of Plaintiff's Amended Motion for Default Judgment (Docket No. 14), Exhibit A

to Jurczak Affidavit (Docket No. 15) (all filed February 16, 2005).

**II. Background**

Plaintiff Comcast of Massachusetts I, Inc., filed the complaint in this action on

September 15, 2003. On December 17, 2003, plaintiff requested notice of default. (Docket

No. 6) After entry of default by the Clerk, plaintiff moved for default judgment. (Docket No. 7)

(filed April 14, 2004) This court allowed that motion on January 26, 2005, and scheduled a

hearing on damages for February 24, 2005. The plaintiff then submitted a motion to amend its

motion for default judgment, requesting damages that were not requested in its original motion for default judgment.  (Docket Nos. 11, 12, 13, 14) (all filed February 16, 2005)  The plaintiff also submitted an affidavit from one of its employees on the subject of damages.  (Docket Nos. 13, 15) (both filed February 16, 2005)

  Before the hearing, I issued an order relating to a possible change in the defendant's address.  (Docket No. 16)  I rescheduled the damages hearing to March 30, 2005.  At the hearing on that date, I concluded that it was appropriate to vacate my earlier order allowing the plaintiff's motion for default judgment. (Docket No. 18)   I then ordered the plaintiff to mail copies of the pending motions to a second address that might have been the defendant's residence. (Id.)  I also ordered the Clerk to mail copies of the notice of entry of default to this second address. (Id.)  These copies were returned as undeliverable, and the defendant has not responded in any fashion.

### III. Analysis

  I conclude that it is appropriate for me to allow the plaintiff's motion to amend the motion for default judgment as unopposed.

  In Comcast of Massachusetts I, Inc. v. Naranjo, I was faced with a similar motion for default judgment for an action under this statute.  Id., 303 F. Supp. 2d 43 (D. Mass. 2004).  I conclude that in this case, as in Naranjo, I should also allow the motion for default judgment and proceed to calculate damages in the same manner.

  In that opinion, I described how to determine statutory damages: "I conclude that I should award as statutory damages no more than as reasonable an estimate of actual damages as

the facts here allow." <u>Id.</u> at 49.  In that case, I based my estimate of actual damages upon the charges associated with a reasonable estimate of viewing by an unauthorized interceptor: enhanced services, 10 pay-per-view movies per month, and 4 premium pay-per-view movies per month.  <u>Id.</u>

As I noted in the hearing on March 30, 2005, the employee's affidavit would be sufficient to establish damages if the defendant did not respond.  Based upon this affidavit, I find the following facts:

(1) The defendant began intercepting cable signals in January 1999.

(2) The defendant stopped intercepting cable signals in September 2000.

(3) The duration of the defendant's unauthorized interception was 21 months.

(4) The defendant paid an average of $38.00 per month for cable service during those 21 months.

(5) The average monthly charge for the premium channels to which the defendant gained access through his unauthorized interception was $68.00.

(6) The average cost for pay-per-view movie offerings during the 21-month period was $3.95 per movie.

(7) The average cost for pay-per-view premium movie offerings during the 21-month period was $8.95 per movie.

Based on the costs in my findings of fact, I conclude that $105.30 per month is a reasonable estimate of damages.  I arrive at this number in the following way.  I subtract the $38 the defendant did pay from the $68 charge for enhanced services.  I then add my estimate of 10 movies per month at $3.95 per movie, or $39.50.  Finally, I add my estimate of 4 premium movies

3

per month at $8.95 per movie, or $35.80. The per-month damages totals $105.30. For the entire

21 month period, estimated actual damages totals $2,211.30.

The plaintiff has also requested enhanced damages under the statute. The plaintiff

relies upon a recent decision by Judge Saylor in this district, <u>Charter Communications</u>

<u>Entertainment I, LLC</u> v. <u>Burdulis,</u> — F. Supp. 2d —, 2005 WL 984223 (D. Mass. 2004). Judge

Saylor noted varying approaches within the circuit on the question of enhanced damages under

the statute and decided that "[t]o maintain some semblance of consistency with the case law in

this circuit, the Court will adopt the position that a $1,000 enhanced damages penalty is the

presumptively correct amount for single violations by individual subscribers." <u>Id.</u> at *14. I find

Judge Saylor's approach persuasive and conclude that an enhanced penalty of $1,000 is warranted

in this case. This enhancement increases the amount of statutory damages to $3,211.30.

Section 553(c)(2)(C) authorizes this court to "direct the recovery of full costs,

including awarding reasonable attorneys' fees to an aggrieved party who prevails." <u>Id.</u> Plaintiff's

counsel avers that the plaintiff is entitled to $199.96 in costs, comprising the $150 filing fee and

$49.96 sheriff's service fee. I credit these assertions and award the plaintiff $199.96 in costs.

Plaintiff's counsel has also submitted an affidavit itemizing the hours that he and a paralegal

expended upon this case. I find that the 6.0 hours of attorney time and 5.3 hours of paralegal time

are a reasonable expended number of hours. I also find that the hourly rates of $200 for attorney

time and $90 for paralegal time are reasonable hourly rates. I award to plaintiff $1,677 in

reasonable attorneys' fees.

Accordingly, the court finds that the plaintiff is entitled to judgment.

4

**ORDER**

For the foregoing reasons, it is ORDERED

(1) Plaintiff's Motion to Amend Motion for Default Judgment (Docket No. 11) is ALLOWED.

(2) Plaintiff's Amended Motion for Default Judgment (Docket No. 13) is ALLOWED.

(3) The Clerk is ORDERED to enter forthwith on a separate document a final judgment as follows:

For the reasons stated in the Memorandum and Order of this date, it is ORDERED:

(1) Judgment for plaintiff.

(2) Plaintiff is awarded $3,211.30 in statutory damages, pursuant to 47 U.S.C. §§ 553(c)(3)(A)(ii), (c)(3)(B).

(3) Plaintiff is awarded $199.96 in costs, pursuant to 47 U.S.C. § 553(c)(2)(C).

(4) Plaintiff is awarded $1,677 in reasonable attorneys' fees, pursuant to 47 U.S.C. § 553(c)(2)(C).

(5) Defendant Andrew Doucette is hereby permanently enjoined from the further modification and/or use of electronic equipment designed for the unauthorized interception of signal in violation of provisions of Title 47.

(6) Plaintiff shall receive post-judgment interest on the monetary awards pursuant to 28 U.S.C. § 1961(a), at the federal judgment rate applicable on the date of this judgment (3.35%).

_____/s/Robert E. Keeton_____

Robert E. Keeton
Senior United States District Judge

5

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
TIME WARNER CABLE OF NEW YORK CITY, a division of Time Warner Entertainment
Co., L.P., Plaintiff,
v.
PHELINA'S SUDS, Defendant.
No. 00Civ.4432(LTS)(RLE).
May 26, 2004.

REPORT AND RECOMMENDATION

ELLIS, Magistrate J.

## I. INTRODUCTION

*1 This is an action by Time Warner Cable of New York City ("TWCNYC") against Phelina's Suds ("Phelina's"), for unauthorized interception and viewing of TWCNYC's "scrambled" cable-borne television signals. On September 30, 2003, default judgment was entered against Phelina's by the Honorable Laura Taylor Swain. The matter was referred to the undersigned for an inquest on damages. TWCNYC seeks damages pursuant to the Communications Act of 1934, as amended, **47 U.S.C. §§ 553**(a) and 605(a). For the reasons stated below, I recommend that judgment be entered for TWCNYC in the amount of $9,103.17.

## II. BACKGROUND

TWCNYC is a cable television operator which has been awarded franchises by New York City. Affidavit of Thomas Allen, dated April 7, 2004, submitted in support of the inquest for damages ("Allen Aff."), at ¶ 2. Pursuant to these franchises, TWCNYC is authorized to construct, operate and maintain cable television programming in the City, including New York and Queens Counties. *Id.* TWCNYC provides various tiers of cable television programming and different individual programming channels. *Id.* at ¶ 3. The "Basic" service allows an individual to subscribe on a monthly basis, and receive enhanced quality reception of broadcast stations and some added programming services. *Id.* "Standard" service is also subscribed on a monthly basis, and includes the basic service package plus additional programming services, but excludes "premium" and pay-per-view programming services. *Id.* For commercial establishments which do not typically have televisions for patron entertainment, TWCNYC's Standard package ranges from $45 to $60 per month, depending on the size and location of the establishment. *Id.* For establishments which generally allow patrons to view television broadcasts, these rates range from $100 to $160 per month. *Id.*

TWCNYC subscribers may elect to subscribe to one or more "premium" programming services such as Cinemax, Home Box Office and Showtime, for an additional monthly charge per service of $7 to $13. *Id.* at ¶ 4. TWCNYC also offers pay-per-view programming, which allows a subscriber to purchase individual movies, sporting events, or other entertainment for a perevent fee of $4 to $49.99 over and above the subscriber's regular monthly fee. *Id.* at ¶ 5. The aggregate cost for all pay-per-view events is approximately $400 per month. *Id.* Each subscriber is entitled to receive only the level of programming and services which he or she selects and pays for. *Id.* at ¶ 7. TWCNYC receives the signals to all of its premium and pay-per-view programming channels by transmissions received via orbiting satellites and local radio towers. *Id.* at ¶ 9. To protect its premium and pay-per-view programming services from unauthorized reception during its transmission, TWCNYC encrypts, or "scrambles," the signals. *Id.* For a subscriber to receive these transmitted cable television signals on his or her television set, TWCNYC provides a device known as a converter-decoder, which descrambles only those channels which the subscriber has selected and purchased. *Id.* at ¶¶ 8, 10.

*2 The converter-decoders which TWCNYC provides to its subscribers have the technology feature and function known as "addressability." *Id.* at ¶ 11. Addressability is a

communication link between a cable operator's central computer and the descrambling and computer circuitry in each converter-decoder provided to its subscribers. *Id.* It enables a cable operator, for example, to send a signal command to the converter-decoders assigned to those subscribers who have purchased a pay-per-view program. *Id.* at ¶ 12. The signal command instructs the converter-decoder assigned to those subscribers to descramble the particular pay-per-view program which has been purchased. *Id.* When the pay-per-view program is over, another command is sent for those converter-decoders to resume scrambling pay-per-view programming. *Id.* Addressability also enables a cable operator to upgrade or downgrade its subscribers' authorized levels of service without having to mechanically alter or physically replace a converter-decoder by way of a service call to a subscriber's residence. *Id.*

There is a black market of distributors of "pirate" converter-decoders. *Id.* at ¶ 16. An authorized converter-decoder may also be modified into a pirate one. *Id.* A pirate converter-decoder disables the addressability technology, and prevents the cable operator from communicating with it. *Id.* at ¶ 17. This enables the user of such a device to receive all scrambled premium and pay-per-view programming in a descrambled mode. *Id.*

TWCNYC maintains a 24-hour cable news channel called New York News One. *Id.* at ¶ 13. This channel is only transmitted on channel one throughout TWCNYC's New York City cable television franchise, and is only available from TWCNYC and other cable televison operators authorized to operate in the City of New York. *Id.*

A. Phelina's Unauthorized Use

In February 2000, TWCNYC received information that Phelina's Suds, a laundromat, was obtaining unauthorized cable programming. *Id.* at ¶ 18. TWCNYC engaged ACI Investigations to investigate Phelina's. *Id.* On March 3, 2000, an undercover investigator observed a coaxial cable running from the roof of the building. *Id* . The investigator entered Phelina's, and saw a television set in the rear of the store with a coaxial cable running from the rear of the television into the back office. *Id.* On April 11, 2000, the investigator returned to Phelina's, and asked the employee there to turn on New York News One. *Id.* at ¶ 20. The employee complied, and the investigators observed a clear broadcast of New York News One. *Id.* Phelina's was not a subscriber to TWCNYC's cable programming, and not authorized to receive programming services from TWCNYC, including New York News One. *Id.* at ¶¶ 18, 20.

## III. DISCUSSION

Phelina's has failed to appear or defend in this action and have been adjudged in default by the order entered by Judge Swain. "[A] default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability." *Bambu Sales, Inc. v. Ozak Trading, Inc.,* 58 F.3d 849, 854 (2d Cir.1995) (quoting *Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 63 (2d Cir.1971), *rev'd on other grounds,* 409 U.S. 363(1973).

**\*3** TWCNYC was directed by the undersigned to submit affidavits and any other documentation in support of its request for damages. It seeks statutory damages in the amount of $10,000, under 47 U.S.C. § 605, and its costs and attorney's fees.

A. Statutory Framework

**Section 553(a) of title 47 of the United States Code** provides, in pertinent part: No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law. Subsection (b) prescribes criminal penalties for willful violations, and subsection (c) creates a civil cause of action for "any person aggrieved by any violation of subsection (a)(1)." Civil remedies include injunctive relief, damages, costs and attorney's fees. **47 U.S.C. § 553**(c)(2). As to damages, the party aggrieved may prove "actual damages" as specified in subsection (c)(3)(A)(I), or, as plaintiff has done here, may elect to receive, under subsection (c)(3)(A)(ii), "statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just." Whichever method of computation of damages is chosen, the amount awarded may be increased if plaintiff proves willfulness or decreased if defendant proves innocence. **47**

U.S.C. §§ 553(c)(3)(B) and (C).

Section 605(a) of title 47 of the United States Code provides, in pertinent part:
No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.
47 U.S.C. § 605(a). Subsections (e)(1) and (2) prescribe criminal penalties, and subsection (e)(3) creates a civil right of action for "person[s] aggrieved." 47 U.S.C. § 605(e)(3)(A). Civil remedies include injunctive relief, costs and attorney's fees, § 605(e)(3)(B)(I) and (iii); and either "actual damages," § 605(e) (3)(C)(I)(I), or "an award of statutory damages for each violation … in a sum of not less than $1,000 or more than $10,000 …," § 605(e)(3)(C)(I)(II). In provisions that correspond to § 553(c)(3)(B) and (C), the amount awarded under § 605 may be increased if plaintiff proves willfulness or decreased if defendant proves innocence. §§ 605(e)(3)(C)(ii) and (iii).

B. Phelina's Liability
TWCNYC's programming is broadcast via orbiting satellites and is therefore protected under 47 U.S.C. § 605(a) as radio communications, and Phelina's unauthorized reception is a violation of 47 U.S.C. § 605(a), which prohibits the unauthorized reception of protected radio communications, as well as § 553(a)(1), which protects all communication by cable systems. *International Cablevision, Inc. v. Sykes,* 75 F.3d 123, 133 (2d Cir.1996) ("*Sykes II*"); *Time Warner Cable of New York City v. U.S. Cable T.V., Inc.,* 920 F.Supp. 321, 328-29 (E.D.N.Y.1996). TWCNYC is a "person aggrieved" within the meaning of 47 U.S.C. §§ 553(c)(1) and 605(e)(3)(A).

*\*4* When a court determines that a defendant's conduct has violated both § 605 and § 553 of the Communications Act, a plaintiff may recover damages only under one of those sections. *American Cablevision of Queens v. McGinn,* 817 F.Supp. 317, 320 (E.D.N.Y.1993). An aggrieved cable operator is entitled to elect to recover damages under § 605 in consideration of § 605's higher damages awards. *International Cablevision, Inc. v. Sykes,* 997 F.2d 998, 1007 (2d Cir.1993); *Sykes II,* 75 F.3d at 127. TWCNYC has elected to recover money damages under § 605 against Phelina's in the form of statutory damages as opposed to actual damages.

C. Calculation of Damages
According to TWCNYC, its Standard service costs approximately $45 to $60 per month where the programming is not provided to patrons, premium channels add $7 to $13, and pay-per-view adds $4 to $49.99 per event. It estimates that the total value of the entertainment on a monthly basis is approximately $400. Because it is not possible to know how many unauthorized broadcasts were received by Phelina's and there is no definite indication of how long the illegal activity continued, statutory damages are appropriate. The defendant here is a laundromat. There is no indication of how large an establishment it is, or how many, if any, patrons were there to observe the broadcast. There is also no indication that any premium broadcasts or pay-per-view programs were pirated.

Given the nature of the business, the lack of information concerning duration, and the need for deterrence, the Court finds that damages in the middle range are appropriate, and recommends an amount of $5,000. This is comparable to awards in similar cases. *See, e.g., Time Warner Cable of New York City v. Taco Rapido Restaurant, et al.,* 988 F.Supp. 107, 111 (E.D.N.Y.1997) (award of $3,750, representing $50 per patron in restaurant); *Cablevision Systems Corp., et al. v Maxie's North Shore Deli Corp., et al.,* No. 88 Civ. 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) ($5,000 in statutory damages; $25,000 additional for willfulness); *Cablevision Systems New York City Corp. v. Faschitti,* No. 94 Civ. 6830, 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996) ($10,000 in statutory damages; $10,000 additional for willfulness).

C. Attorney's Fees
TWCNYC has submitted an affidavit by Melinda M. Dus indicating the tasks performed, the hours spent, and the rates requested. I have examined the supporting documentation and conclude that the attorney's fees and disbursements were reasonable and adequately

documented. TWCNYC seeks an award of $2,726 for attorney's fees, plus $1,377.17 in costs, for a total of $4,103.17. I therefore recommend that TWCNYC be awarded $4,103.17 for fees and costs..

III. CONCLUSION

For willful violation of § 605(a), I recommend that Phelina's pay statutory damages of $5,000, plus costs and attorney's fees of $4,103.17, for a total of $9,103.17. Judgment should be entered accordingly.

*5 Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Laura Taylor Swain, 40 Center Street, Room 1205, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (*per curiam* ); 28 U.S.C. § 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).

S.D.N.Y.,2004.

Time Warner Cable of New York City v. Phelina's Suds

Not Reported in F.Supp.2d, 2004 WL 1293241 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:00cv04432 (Docket) (Jun. 15, 2000)

END OF DOCUMENT